Bullard, J.
My opinion remains unchanged by the new arguments adduced for the defendant; and I think the appeal ought to be dismissed, for the reasons stated in my first opinion.
Morphy, J.
" When this case was last before the court, I concurred in the opinion entertained by a majority of my colleagues ; but further reflection having brought me to a different conclusion, it is proper that I should state briefly the grounds on-which it rests. I deem it unnecessary to go into the inquiry, whether this court can constitutionally exercise appellate criminal jurisdiction. My individual impression has always been, and still is, that the terms of the constitution are not clearly exclusive of' such jurisdiction: but, at the same time, I think, that after the' repeated decisions of this court, the question can no more be considered as an open one. The Legislature, moreover, have never made any provision for the exercise of criminal jurisdiction by this tribunal, and have lately established a Court of Appeals in Criminal Cases. The only ground then on which we can entertain this appeal must be, that the present is a civil case, and should have been prosecuted as such. It is admitted, on all hands, that penal actions are civil suits, and cannot be carried on by indictment, unless that mode of proceeding^ pointed out by the-statute denouncing the fine or penalty. But the question here, is,' *310 whether the act of 1817, under which Williams has been indicted, creates a crime or misdemeanor punishable criminally, and to be prosecuted by information or indictment; or whether that law only gives a penal action, in the legal acceptation of the term ; in other words, whether it is a penal statute as contradistinguished from a criminal law.
The statute enacts: “That no slave shall be imported or brought into this, State, who shall have been convicted of the. crimes of murder, rape, arson, manslaughter, attempt to murddr, burglary, or having raised or attempted to raise an insurrection among the slaves in any State of the Union, or elsewhere ; and, if any such should be, they shall, on conviction thereof, be seized and sold, for cash, to-the highest bidder, after fifteen days notice of time and place of sale, one-half of the purchase money to be applied to the use of the State, and the other half to the informer ; and any person who shall import or bring into the State such slaves, knowing that they have been convicted of any of the above mentioned crimes, shall, upon conviction before any court of competent jurisdiction, be fined for each and every such slave in the sum of five hundred dollars, one-half to be applied to the use of the State, and the other half to the use of the informer.”
It has not been,'nor-can it be pretended, that the importation into this State of slaves convicted of any of the felonies enumerated in this law, is not a serious public wrong, or offence. The inquiry then is, how should it have been prosecuted under our laws. The Legislature have provided, that all prosecutions for capital or infamous crimes, or offences punishable by imprisonment at hard labor, shall be by indictment duly found by a grand jury ; and prosecutions for all other offences may be by information. B. & C.’s Dig. 197, § 42. This law has been so far amended by an act approved March 8th, 1841, that in all criminal prosecutions in the Criminal Court of the First District for crimes punishable by not more than two years hard labor, the proceedings may be by information. These enactments entirely do away with all the difficulties which exist in the common law. States, as to what matters are indictable or not. We have in this State no common law offences punishable with fine and imprisonment ; with us, all crimes and misdemeanors must be created *311 by statute, and can only be punished in the manner provided for bylaw. If the Legislature merely prohibits an act without annexing a punishment for doing it, no one is punishable for having done the act. As to the manner of prosecuting offences against the criminal laws of the State, it is regulated, as we have seen, according to the degree of punishment inflicted for their commission. If our statutes are examined, it will be found that there are many offences not punishable otherwise than by fines; and that the word punishment is not unfrequently used in reference to the infliction of such fines. It will be further found, that in some instances the sanction of the law is a fine or an imprisonment, or both, at the discretion of the court; and that whenever the fine is not paid, the punishment of imprisonment for a period not exceeding one year, is substituted in lieu of it. B. &, C’s. Dig. 247, 248, 259, 260, 510, 548. Acts of 1842, p. 260. From all these provisions of our laws, it is fair and reasonable to infer, that all offences for which an indictment is not required, may be prosecuted by information, whether the punishment denounced for their commission be fine, imprisonment, or both. If an ex officio information could have been filed against Williams, the Attorney General could, a fortiori, submit an indictment against him to a grand jury, as the latter mode of proceeding is considered as affording greater security to the accused.
Blackstone tells us, that “ Informations are of two sorts: first, those which are partly at the suit of the King, and partly at that of a subject: and secondly, such as are only in the name of the King. The former are usually brought upon penal statutes, which inflict a penalty upon conviction of the offender, one part to the nse of the King, and another to the use of the informer, and are a sort of qni tam actions (the nature of which was explained in a former volume) only carried, on by a criminal instead of a civil process.” 4 Black. 308. 3 Black. 160. We find also in Chitty, that criminal informations are to be filed on particular acts of Parliament, which inflict a penalty upon conviction, one-half to the use of the King, and the other to the use of the informer. He also calls these informations a sort of penal action, only carried on by criminal instead of civil process. 1 Ohitty’s Criminal Law, 137. These authorities, which stand deservedly high, ap *312 pear fully to sustain the course pursued by the Attorney General. They show, that it is not enough that a pecuniary penalty be of a sum certain, or that a part of it be given to the King, and the other half to an informer, to justify a suit, either on the part of the King, or on the part of a common informer. If a statute imposing a fine does not authorize its recovery by action of debt, bill, plaint, or information of debt, but merely denounces such fine or penalty to be paid by the offender on conviction, the law is properly a criminal one, and the offender must be prosecuted by information. The fine, in such a case, is the consequence of and follows the conviction, and is to be applied when recovered, in the manner pointed out by the statute. It is the mode of prosecution which ordinarily distinguishes penal statutes from criminal laws, because most penal statutes direct that the penalty may be recovered by action or information; but when the right to sue for and recover the penalty is not given,' the mode of prosecution is the same as under any other criminal law. Thus Blackstone and Chitty call an information on statutes which inflict a fine or penalty upon conviction of the offender, a sort of qui tam action to be carried on by a criminal process, in contradistinction to qui tam actions properly speaking, which are civil suits, authorized generally by penal statutes.
The Attorney General contends, that no penal action or suit for the recovery of a penalty can be maintained, unless the authority to sue for it or to recover it, is expressly given by the statute on which the action was founded. In this position he appears to be fully supported by 3 Blacks. 160. Bacon’s Abridg. verbo, Actions, qui tam. 2 Hawkins, ch. 26, p. 104. This last writer says ; “ I take it for granted that they (qui tam actions) lie on no statute which prohibits a thing as being an immediate offence against the public good in general under a certain penalty, unless the whole or part of such penalty be expressly given to him who will sue for it, because, otherwise, it goes to the King, and nothing can be demanded by the party; but where such statute gives any part of such penalty to him who will sue for it by action or information, &c., I take it to be settled at this day, that any one may bring such action or infor *313 malion, and lay his demand tarn fro domino rege quam fro seif so.”
In the latter case the King may himself bring the suit; but if any one of his subjects has commenced it before him, he cannot maintain it. The several decisions relied on by the defendant’s counsel do not contradict, but rather support this doctrine. They will on examination, be found to be based on statutes giving in express terms, the right to sue for and recover the penalty. In some of these cases the question was only as to the form of the action to be resorted to, when the right to sue for the penalty is given. These decisions show, that it is well settled that an action of debt is the proper remedy, but none of them establish that when, as in the present case, a statute prohibits an act under a pecuniary penalty to be paid by the offender on conviction, without giving the right to sue for the recovery of such penalty, an action or information of debt lies. It has been urged that, admitting it to be clear that no ordinary individual can sue to recover a penalty by a penal action, unless the statute creating the penalty authorizes him to do so, yet, where a statute prohibits a thing under a certain pecuniary penalty, without making any appropriation of the penalty, the unappropriated penalty goes to the Crown in England, and if nothing is said as to the recovery, that it must be sued for in a court of revenue, and not by indictment. Admitting that the authorities quoted in support of this position show that such is the common law doctrine on the subject, which is by no means clear, it appears to me, that we must be governed by those provisions of our own laws which prescribe the manner in which crimes and offences are to be prosecuted in this State, whatever be the punishment affixed to them, unless the statute imposing a fine for the violation of a public law authorizes its recovery by a penal action or civil suit. The distinction between criminal laws and penal statutes is clearly marked in our legislative enactments, although the statutes on which penal actions can be brought are not very numerous. They will be found in the inspection laws, in the laws in relation to lotteries, ferries, &c. B. & C.’s Dig. 501 to 506, 548. 1 Moreau’s Dig. 477 to 493. In these laws the right to sue for and recover the penalty is allowed to the party aggrieved,, *314 to a common informer, or to the State. The act of 1S32, giving civil jurisdiction to the Criminal Court of the First District, and allowing an appeal to this tribunal, was no doubt intended to apply to suits brought under these laws; but not to prosecutions which are directed by law to be carried on by information, but which may be also by indictment, if the public prosecutor see fit to adopt that proceeding, which is more favorable to the accused. The act of 1817 is criminal law. It contains no provision for the recovery of the fine by suit; its language excludes the idea of a civil proceeding, as it imposes the fine upon the conviction'of the offender, and orders it to be applied-one-half to the use of the State, and one-half to the use of the informer. The word informer in this law, evidently means an informer in a criminal prosecution, who gives information to the proper officers of the commission of the offence. If the fine which is imposed as a punishment for the violation of the act be not paid, the law substitutes in lieu of it that of imprisonment for a period not exceeding one year. B. &. C.’s Dig. 260, § 10. How, then, can the obligation to pay this fine be said to be a mere civil debt, for which, under our present laws no imprisonment exists ? If it can at all be viewed as a debt, it is one which only arises from the conviction of the offender, and for which he is not legally bound until such conviction. It can, moreover, be discharged by the imprisonment provided for in case of non-payment, while an ordinary debt was not extinguished by the imprisonment of the debtor, when that harsh remedy was allowed by our laws. In treating of the different kinds of punishment known to the law, Chitty remarks: “ That fines are the lowest species of punishment which courts of justice have power to inflict.” “ That when an act of Parliament directs a fine at the will of the King, this is always understood to mean at the discretion of the judges, and they fix it at their pleasure within constitutional boundaries; but when the statute specifies the sum to be forfeited, the courts have no power to mitigate it after conviction.” He concludes by saying, that “ it should seem that the defendant is not entitled to his discharge from imprisonment in respect of such fine, on the ground of his being an insolvent debtor, as it is not a debt, but .a punishment for a crime.”
*315 As relates to the forfeiture of the slaves, admitting, as it is contended, that the proceeding should have been by civil process, and that there is error in the sentence passed upon Williams, so far as it decrees such forfeiture upon an indictment founded on that part of the statute imposing the fine, such an error cannot authorize us to revise the sentence of the Criminal Court. If, in relation to the slaves, the proceeding was coram non judice, the sentence has not impaired the defendant’s title and right of ownership in them. I am, therefore, of opinion, that the motion to dismiss filed by the Attorney General should prevail.
Simon, J.
The important question which this case presents, having been fully investigated on a re-hearing, a further attentive consideration thereof has brought me to a different conclusion from that which I had heretofore adopted. I am now firmly, of opinion, that the Legislature intended by the enactment of the act of the 29th of January, 1817, under whieh the defendant was indicted, to create a crime or misdemeanor punishable criminally. The penalty or fine imposed upon the defendant upon conviction, in default of the payment or the recovery of which, the convicted party, under the act of the 19th of March, 1818, is to be imprisoned for a period not exceeding one year, cannot, in my opinion, be made the subject of a penal action by civil suit; it must be prosecuted by an indictment or information. Without entering into any further discussion of the question, which, I must confess, appeared to me at the outset to be a very doubtful one, I deem it sufficient to refer to the reasons adduced, and the authorities cited' by my colleague Judge Morphy, whose views I have adopted, and to conclude with him, that the present appeal ought to be dismissed.

Appeal dismissed.